UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| BRYANT SIAS | CIVIL ACTION NO. 6:15-cv-02223 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| QUALITY ENERGY SERVICES, INC. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Pending before this Court is defendant Quality Energy Services, Inc.'s motion for summary judgment. (Rec. Doc. 69). In opposing Quality's motion, the plaintiff requested that summary judgment be entered in his favor, and this was interpreted as a motion for summary judgment on behalf of the plaintiff (Rec. Doc. 73). Both motions are opposed. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, both motions are DENIED.

## Background

In December 2014, the plaintiff, Bryant Sias, was employed by defendant Quality Energy Services, Inc. as a deckhand on Quality's lift boat, the GLOBAL LIFT 5. He alleged in his complaint that he fell down the ladder leading to the vessel's engine room on December 2, 2014, resulting in serious and permanently disabling injuries. He further alleged that he was a Jones Act seaman and that his claims are governed by the general maritime law. He asserted negligence, unseaworthiness, maintenance, and cure claims against Quality, and he asserted a

claim for sanctions based on Quality's alleged failure to timely and properly pay maintenance and cure. In response, Quality filed the instant motion for summary judgment, arguing that it is not liable to the plaintiff for negligence or unseaworthiness. In opposing Quality's motion, Sias asserted his own lack of negligence and his entitlement to summary judgment in his favor.

## ANALYSIS

**A.  THE SUMMARY JUDGMENT STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[1] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the

---

[1] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

record that demonstrate the absence of genuine issues of material fact.[3] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4] All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[6] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

**B.    THE APPLICABLE LAW**

The plaintiff's allegations that he was a Jones Act seaman at all relevant times, that the accident occurred while he was on a vessel in navigation, and that his claims are governed by the general maritime law are uncontested.

---

[3]   *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[4]   *Washburn v. Harvey*, 504 F.3d at 508.

[5]   *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[6]   *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

The Jones Act provides a seaman with a cause of action against his employer for injuries sustained as a result of the employer's negligence.[8] To state a claim for negligence, a seaman must demonstrate that the defendant owed him a duty, the defendant breached the duty, the plaintiff sustained an injury, and there is a causal connection between the defendant's conduct and the plaintiff's injury.[9] Under the Jones Act, an employer has a duty to provide its seaman employees with a reasonably safe place to work.[10] An employer breaches that duty if it fails to exercise ordinary prudence.[11] Therefore, an employer breaches its duty if it disregards a danger that it actually knew about or should have known about.[13] A seaman may recover damages if his employer's negligence was the legal cause, in whole or in part, of his injury.[14] Whether a duty is owed is a legal question, but whether the defendant breached a

---

[8] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997).

[9] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 592 (5th Cir. 2016); *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000); *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

[10] *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 471-72 (5th Cir. 2015); *Lett v. Omega Protein, Inc.*, 487 Fed. App'x 839, 843 (5th Cir. 2012); *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989); *Bobb v. Modern Products, Inc.*, 648 F.2d 1051, 1057 (5th Cir. 1981).

[11] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d at 339.

[13] *Colburn v. Bunge Towing, Inc.*, 883 F.2d at 374.

[14] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d at 335.

duty is a question of fact.[16] Comparative fault is applicable to Jones Act negligence cases.[17]

A Jones Act seaman may also assert a claim under the general maritime law for injuries caused by the unseaworthiness of a vessel. There are two elements to an unseaworthiness claim. A plaintiff must prove both that an unseaworthy condition existed and that the unseaworthy condition was the proximate cause of his injuries. In other words, the plaintiff must prove that the vessel or the vessel's equipment was not "reasonably suited for the purpose or use for which they were intended" and that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[19]

A vessel is unseaworthy if a condition of the vessel presents an unreasonable risk of harm to the seaman.[20] "A vessel can be unseaworthy if its gear [is] defective, its appurtenances [are] in disrepair, or its crew [is] unfit."[21] Unseaworthiness may

---

[16] *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d at 376; *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978).

[17] *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 302 (5th Cir. 2008); *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d at 339.

[19] *Johnson v. Offshore Exp., Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

[20] *Park v. Stockhill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007).

[21] *Lett v. Omega Protein, Inc.*, 487 Fed. App'x 839, 844 (5th Cir. 2012) (internal quotation marks omitted) (quoting *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971)).

also result from a vessel's crew that engages in unsafe or improper methods of work.[22] A vessel owner's duty to prevent unseaworthy conditions is absolute, continuing, and nondelegable; thus, lack of knowledge or of opportunity to correct unseaworthy conditions does not mitigate the owner's duty.[23]

C. **GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT FOR EITHER PARTY**

The plaintiff went to work for Quality in 2008, and he had been working as a deckhand on the GLOBAL LIFT 5 for four to five years before the accident occurred in December, 2014. (Rec. Doc. 69-8 at 4-5). It is undisputed that he used the ladder going down into the engine room multiple times per day without incident. (Rec. Doc. 69-8 at 13-14). On the day in question, the plaintiff was descending the ladder with a five-gallon bucket of oil in his left hand, when he allegedly slipped and fell down the ladder. (Rec. Doc. 69-8 at 17-23). The sound of his fall was so loud that his coworker, Robert Finley, who was taking a shower at the time, thought that the GLOBAL LIFT 5 had been struck by another vessel. (Rec. Doc. 73-7 at 2-3). The fall allegedly injured the plaintiff's neck and back.

---

[22] *Phillips v. Western Co. of North* America, 953 F.2d 923 (5th Cir. 1992); *Rogers v. Eagle Offshore Drilling Serv., In*c., 764 F.2d 300, 303 (5th Cir. 1985).

[23] *Allen v. Seacoast Products, Inc.*, 623 F.2d 355 (5th Cir. 1980), overruled on other grounds by *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d at 339.

1. **NEGLIGENCE**

Quality argued that it is not liable to the plaintiff under a negligence theory because it breached no duty owed to the plaintiff. As stated above, an employer breaches its duty to provide its seaman employees with a reasonably safe place to work if it fails to exercise ordinary prudence or if it disregards a danger that it knew about or should have known about. An employer has a duty to warn its employees about dangers that are not reasonably known, but is not required to warn its employees about dangers that are open and obvious.

Quality contended in its briefing that "there was absolutely nothing wrong with the stairs." (Rec. Doc. 69-2 at 16). Quality noted that the steps on the ladder to the engine room were constructed of diamond plating, covered in bright yellow paint, and plainly visible to anyone using them. A Coast Guard inspection took place on September 3, 2014 and a "Certificate of Inspection," was issued effective from July 2, 2013 to July 2, 2018. (Rec. Doc. 69-6 at 2-4). Photographs confirm the description Quality provides, however, reliance on the Certificate of Inspection is misplaced.

In accordance with 46 C.F.R. Pt. 1, §2.01-5(b), a Certificate of Inspection "describe[s] the vessel, the route the vessel may travel, the minimum manning requirements, the safety equipment and appliances required to be on board, the total

number of persons that may be carried, and the names of the owners and operators." Such a certificate, while perhaps of some relevance, is not determinative of whether the employer has provided its employees with a reasonably safe place to work or whether a vessel is unseaworthy as that term is used in the context of this litigation.

It is undisputed that the treads were patterned or diamond plated metal and painted yellow, but there was no non-skid tape on the steps at the time of the accident. (Rec. Doc. 73-6 at 4, Rec. Doc. 73-7 at 8; Rec. Doc. 73-10 at 3). The vessel's captain placed non-skid tape on the steps the day after the accident occurred so the tape was presumably either onboard or available to the vessel before the accident. (Rec. Doc. 73-8 at 4-5). However, that fact is not of record. Numerous other persons had previously slipped on or fallen down the same ladder (Rec. Doc. 73-6 at 15; Rec. Doc. 73-7 at 9, 16-17), and complaints about the ladder had been made to Quality before the plaintiff's accident occurred (Rec. Doc. 73-7 at 22-23; Rec. Doc. 73-10 at 9-11).

Robert Finley testified that he personally fell down the ladder about a dozen times. (Rec. Doc. 73-7 at 9). The vessel's captain, Darren Solet, testified that he had slipped on the ladder but had been able to grab the handrail so that he did not fall. (Rec. Doc. 73-8 at 19). Former captain Tony Sevin testified that he had slipped on the ladder. (Rec. Doc. 73-9 at 13). Mark Waltermire, who worked for Quality from about 2008 to 2013, testified that he had slipped on the same ladder, both when

going up and when going down. (Rec. Doc. 73-10 at 4-5). Although some details of these incidents are provided, most of the facts are not sufficiently flushed out and some are based on hearsay, therefore, the weight to be given to this testimony remains to be seen.

Shawn Dupre is Quality's marine operation manager and the person in charge of making sure that Quality's lift boats meet the required safety requirements. (Rec. Doc. 73-5 at 4). Men who worked on the GLOBAL LIFT 5 testified that the treads are narrow (Rec. Doc. 73-7 at 11-12, 16; Rec. Doc. 73-8 at 20; Rec. Doc. 73-10 at 17); the steps are steep (Rec. Doc. 73-7 at 15; Rec. Doc. 73-8 at 20, 25; Rec. Doc. 73-10 at 11); it was not possible to hold a handrail at all times while using the ladder (Rec. Doc. 73-7 at 14, 20; Rec. Doc. 73-8 at 15; Rec. Doc. 73-9 at 7; Rec. Doc. 73-10 at 3-4); and the steps were sometimes slippery (Rec. Doc. 73-8 at 10; Rec. Doc. 73-10 at 11-12).

Quality attached the report of its expert witness, Jack Leary, whose opinion this Court will not consider at this juncture of the proceedings regarding whether the ladder complied with industry standards or regulations. The Court will likewise not consider the opinion of the plaintiff's expert witness, Scott C. McClure, regarding whether the steps were not reasonably safe. The Court can discern for itself whether the handrails extended from the top of the stairway all the way down to the bottom on either side by looking at photographs. Further, this Court will be able to discern

9

for itself whether the patterned treads on the ladder were sufficiently slip resistant for the intended purpose, the angle of the steps on the ladder was appropriate for its intended use, whether the ladders handholds were adequate for a person to descend and not lose a grip and whether the ladder complied with any potentially applicable USCG regulations.

What this Court can observe from the evidence presented is that the ladder can, and has been, traversed without incident. The question presented, however, is whether the ladder can safely be traversed while holding a five gallon bucket of oil, perhaps if one holds on to the handrails with one's left hand while holding the bucket with the right. The credibility of the witnesses, including the plaintiff, are central to the resolution of liability and the degree of negligence, if any, on the part of either or both parties.

"In determining whether a case presents triable issues of fact," the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[29] Accordingly, the conflicting testimony regarding the condition of the steps create genuine issues of material fact that preclude summary judgment in Quality's favor.

2. **UNSEAWORTHINESS**

---

[29] *Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

Quality argued that its vessel was not unseaworthy – not because of the condition of the vessel but because the plaintiff's negligence was the sole cause of his accident. In support of that argument, Quality relied on a district court decision holding that a plaintiff cannot recover when his injury was caused entirely by his own negligence, which created an unseaworthy condition.[30] In that case, the plaintiff who was safeguarding a stacked vessel attempted to produce gold by microwaving mercury on half a potato and was overcome by the resulting fumes. The court said "[t]he record is devoid of a single fact which would support the reasonable inference that the plaintiff was injured by any acts or omissions other than his own."[31] The same cannot be said in this case, where there are genuine issues of material fact concerning Quality's knowledge of the danger posed by using a ladder leading down to the engine room without non-skid tape on its treads when one is carrying a five gallon bucket of oil. Therefore, genuine issues of material fact concerning Quality's negligence, which, if established, may have caused or contributed to the cause of the accident.

Further, the case on which the one cited by Quality relied for this proposition is also insufficiently on point to be persuasive. There,[32] the plaintiff was cleaning a

---

[30] *McClendon v. OMI Offshore Marine Service*, 807 F.Supp. 1266, 1268 (E.D. Tex. 1992).

[31] *McClendon v. OMI Offshore Marine Service*, 807 F.Supp. at 1268.

[32] *Keel v. Greenville Mid-Stream Service, Inc.*, 321 F.2d 903, 903-04 (5th Cir. 1963).

11

landing on the vessel with soap and water. When the captain told him to go make coffee, he stepped onto the landing that was slick from the soap and water, and he slipped and fell to the deck three feet below. The district court found that the vessel was seaworthy in all respects except for the landing that was momentarily unseaworthy only by the act of the plaintiff's cleaning it. On appeal, the Fifth Circuit found that the plaintiff was not entitled to recover because his own negligence was wholly responsible for causing the fall and the temporary unseaworthy condition. Again, those facts are significantly different from those presented in this case. In addition to genuine issues of material fact concerning whether Quality was negligent, there also are genuine issues of material fact concerning whether the vessel was seaworthy. The plaintiff claims that the steepness of the ladder, the narrowness of the treads, the lack of non-skid tape on the treads, the slipperiness of the steps, and the lack of a handrail going from the top to the bottom of the ladder make the vessel unseaworthy while at the same time it is at least possible, based on the evidence presented, to safely traverse the ladder creating genuine issues of material fact as to the seaworthiness of the vessel.

Further, Quality argued that the plaintiff's decision to carry the oil bucket in his left hand while descending the ladder with his back to the steps was negligent and the sole cause of his accident. Quality suggested that alternative methods for traversing the ladder while carrying the bucket should have been used – for example,

facing the steps rather than facing away from them or using a rope and pulley system to lower objects into the engine room. This Court finds that there are genuine factual disputes concerning what might have caused the accident in addition to the way in which the plaintiff held the bucket and descended the steps. For that reason, Quality has not established that the plaintiff's negligence, if any, was the sole cause of the accident and the plaintiff has not established that his actions were not negligent.

Therefore, in summary, Quality's argument that the vessel was not unseaworthy because of the plaintiff's sole negligence lacks merit, as does the plaintiff's argument that his actions were not negligent.

## CONCLUSION

Having found that genuine issues of material fact exist,

IT IS ORDERED that Quality's motion for summary judgment (Rec. Doc. 69) and the plaintiff's motion for summary judgment (Rec. Doc. 73) are DENIED.

Signed at Lafayette, Louisiana on this 23rd day of August, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE